***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award. The Full Commission AFFIRMS with some modifications the Opinion and Award of Deputy Commissioner Houser.
 ISSUES TO BE DETERMINED
1. Whether plaintiff is entitled to disability compensation as the result of her admittedly compensable low back injury.
2. Whether plaintiff sustained a compensable injury to her left leg and left hip on 31 March 2008 and if so to what compensation, if any, is she entitled. *Page 2 
3. Whether plaintiff is entitled to additional medical compensation and a change of physicians following her being release by Dr. Mark R. Mikles.
4. Whether plaintiff is entitled to sanctions, including attorney's fees and penalties.
 *********** EVIDENTIARY MATTERS
At the hearing, plaintiff submitted the following:
 a. A Denial Letter from the Employment Security Administration, which was admitted into the record and marked as Plaintiff's Exhibit (1) and;
 b. A Photograph of Plaintiff's Left Leg, which was admitted into the record and marked as Plaintiff's Exhibit (2).
Also at the hearing, defendants submitted the following:
 a. An Accommodation Form, which was admitted into the record and marked as Defendants' Exhibit (1);
 b. A Packet of Leave-Of-Absence Forms dated October 30, 2008, which was admitted into the record and marked as Defendants' Exhibit (2);
 c. A Certification of Healthcare Provider Form submitted by Dr. Mark R. Mikles, which was admitted into the record and marked as Defendants' Exhibit (3);
 d. A Corrected Medical Certification Form submitted by Dr. Mark R. Mikles, which was admitted into the record and marked as Defendants' Exhibit (4);
 e. A Packet of Leave-Of-Absence Forms dated January 27, 2009, which was admitted into the record and marked as Defendants' Exhibit (5) and; *Page 3 
 f. A Certified Correspondence from Defendant-Employer to plaintiff, which was admitted into the record and marked as Defendants' Exhibit (6).
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the injury which is the subject of this claim is March 31, 2008.
2. On all relevant dates, the parties hereto were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On all relevant dates, an employment relationship existed between plaintiff-employee and defendant-employer.
4. On all relevant dates, defendant-employer employed three or more employees.
5. On all relevant dates, the carrier of workers' compesnation insurance in North Carolina for defendant-employer was Claims Management, Inc.
6. Plaintiff sustained a compensable low back injury on March 31, 2008.
7. Plaintiff's average weekly wage of $624.01, yielding a compensation rate of $416.00.
8. At and subsequent to the hearing, the parties submitted the following:
 a. A Notebook of Medical Records, which was admitted into the record and marked as Stipulated Exhibit (2) and;
 b. A Packet of Industrial Commission Forms, which was admitted into the record and marked as Stipulated Exhibit (3). *Page 4 
9. Also made part of the record are the depositions of Dr. Mark R. Mikles and Dr. William Somers.
 ***********
Based upon the competent, credible evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was forty-four (44) years of age with her date of birth being May 14, 1964. Plaintiff obtained her GED in 1991. Prior to her employment for defendant-employer, plaintiff worked as a stocker for a grocery store and for a telecommunications company.
2. Prior to the incident giving rise to this claim, plaintiff sustained a puncture wound to her left leg in 2001, after which she developed gangrene. Plaintiff had not required treatment for her left leg for more than a year prior to March 31, 2008. In 2005, plaintiff was involved in a motor vehicle accident and as a result thereof, underwent a right-hip replacement procedure in 2006. Additionally, plaintiff had chronic conditions including heart abnormalities, high blood pressure, depression and panic attacks.
3. Plaintiff was employed by defendant-employer as an over-night stocker. During her shift on March 31, 2008, plaintiff was stocking products on display shelves, specifically liquid bleaches and detergents weighing from five to twenty-five (5-25) pounds, when she sustained an injury to her lower back. As a result of her injury, plaintiff experienced the immediate onset of back pain that radiated into her right leg. *Page 5 
4. The compensability of plaintiff's back injury was admitted by defendants through the filing of an Industrial Commission Form 60 on April 21, 2008. Specifically, defendants admitted that plaintiff had sustained a lower lumbar strain.
5. Following her admittedly compensable low back injury, plaintiff reported it to her supervisor and left work to go home.
6. Also following her admittedly compensable low back injury, plaintiff was out-of-work due to her condition for an initial period of two-weeks.
7. After leaving work on March 31, 2008, plaintiff first sought medical treatment at Triangle Orthopaedics. At that time, plaintiff believed she had displaced her right hip replacement. X-rays revealed that her hip replacement was in tact and her right leg pain was diagnosed to be stemming from her low back injury.
8. On April 1, 2008, and at the direction of defendants, plaintiff sought treatment at Concentra from Dr. Henry J. Adomonis. Following an examination, Dr. Adomonis diagnosed plaintiff as having a lumbar strain for which physical therapy was prescribed. Plaintiff was also referred for an additional orthopaedic evaluation. However, according to Dr. Adomonis' office note of 16 April 2008, this referral was denied by defendants.
9. Also on April 16, 2008, Dr. Adomonis assigned plaintiff light-duty work restrictions of no lifting more than ten (10) pounds, no pushing or pulling greater than ten (10) pounds of force, no bending, squatting, or kneeling and no reaching above her shoulders. These restrictions related to plaintiff's low back strain, and not to her right hip. Plaintiff continued to treat with Dr. Adomonis through June 9, 2008. As of that date, plaintiff's work restrictions were no lifting more than ten (10) pounds, no bending more than six (6) times per hour and no pushing or pulling of more than twenty (20) pounds of force. *Page 6 
10. Upon the referral of Dr. Adomonis, plaintiff was examined by Dr. Mark R. Mikles on 19 June 2009. Dr. Mikles diagnosed plaintiff as having right leg pain and radiculopathy, right buttock pain and a recovering left leg infection. Dr. Mikles requested authorization for an MRI on June 19, 2008, but this was denied by defendants. Additionally, Dr. Mikles assigned work restrictions of no lifting more than ten (10) pounds and that plaintiff have the freedom to sit and stand as needed.
11. At the time of her initial examination with Dr. Mikles, plaintiff had already returned to work for defendant-employer on the night-shift as greeter, door watcher and fitting room attendant.
12. Dr. Mikles again requested an MRI on July 10, 2008. Eventually, the recommended MRI was approved by defendants and took place on July 30, 2008. The results of the MRI revealed degenerative changes at L2-L3 to L4-L5, but no pinching or right sided pathology.
13. Later, Dr. Mikles recommended electric diagnostic testing and a trial of epidural steroid injections, but these treatments were not initially authorized by defendants according to his records. In Dr. Mikles' opinion, these results "may" have some correlation with plaintiff's right leg pain and "may" have aggravated her degenerative disk disease. However, Dr. Mikles also discussed with plaintiff the possibility that her right leg pain may be due to residual pain from her pre-injury right-hip replacement.
14. Because of plaintiff's left leg ulcer/infection, Dr. Mikles advised that he could not recommend epidural steroid injections until the active infection was controlled. At his deposition, Dr. Mikles testified to reasonable medical certainty that it was necessary to address the left leg infection before the epidural steroid injections or other interventional treatment could *Page 7 
proceed. Plaintiff then used her private health insurance to obtain treatment for her left leg ulcer/infection at the Duke University Medical Center Wound Clinic.
15. Plaintiff asserts that Dr. Mikles' inability to render a causation opinion to a reasonable degree of medical certainty is due to the fact that the recommended diagnostic and therapeutic measures were not approved. However, as for the epidural steroid injections, the primary reason for plaintiff not having them is her left leg ulcer/infection.
16. Regarding her left leg ulcer/infection, plaintiff further asserts that the need for ongoing care at a wound clinic was causally related to her admittedly compensable back injury. In support of her position, plaintiff notes that prior to March 31, 2008, she had only required periodic treatment and had not required any treatment in the year preceding that date. The undersigned finds this argument to be unpersuasive and not supported by the credible lay and medical evidence of record.
17. Plaintiff testified that defendant-employer accommodated her light duty work restrictions through October 30, 2008. During this period, plaintiff advised her physical therapist on multiple occasions that she was tolerating work within her restrictions well.
18. On October 10, 2008, Ms. Stephanie Yates, ANP, with Duke University Medical Center completed a Request for Accommodation form that was also signed by plaintiff. Ms. Yates noted that plaintiff had been diagnosed with left leg venous ulcer, varicose veins and lower extremity edema for which plaintiff had been assigned work restrictions requiring her to elevate her left leg at work.
19. On October 22, 2008, Ms. Tammy Mills, defendant-employer's Personnel Manager, and Ms. Yawnda Pou, defendant-employer's Human Resources Manager, met with Mr. Andy Bush, with accommodation services, to discuss plaintiff's request. As a result of that *Page 8 
meeting, it was determined that defendant-employer could not accommodate the requested accommodation. Plaintiff was advised of this decision on October 30, 2008 and informed that she would need to complete leave of absence paperwork to secure FMLA leave.
20. Plaintiff completed the leave of absence paperwork, including the medical certification form on her own, rather than having her physicians complete the form.
21. Ms. Mills testified that she received the leave of absence paperwork on
December 23, 2008, and that it arrived a Certification of Health Care Provider/U.S. Department of Labor form completed by Dr. Mikles, dated October 30, 2008.
22. Subsequent to his completion of the above referenced form on October 30, 2008, Dr. Mikles noted on November 20, 2008 that plaintiff reported being required to lift more than her restrictions allow and that this had exacerbated her right buttock and radiating left leg pain.
23. Also on December 23, 2008, Ms. Mills spoke with plaintiff by telephone and explained that the handwritten leave of absence paperwork had been completed incorrectly because plaintiff had filled out the medical certification form on behalf of her doctor, and Dr. Mikles had completed the wrong form altogether. Later that day, Dr. Mikles faxed the proper medical certification form, but it did not address the leg restrictions which led to the original request for leave of absence paperwork.
24. On December 10, 2008, plaintiff underwent a functional capacity evaluation (FCE). However, the results were deemed invalid due to plaintiff's failure to cooperate, aggressive behavior and symptom magnification.
25. On January 15, 2009, Dr. Mikles noted that plaintiff's FCE results were invalid, but nonetheless assigned permanent work restrictions of no lifting more than ten (10) pounds *Page 9 
with a flexible standing schedule and no overhead lifting. Additionally, Dr. Mikles assigned plaintiff a five percent (5%) permanent partial disability rating to her back.
26. On or about January 21, 2009, plaintiff returned to work for defendant-employer without notifying Ms. Mills. When Ms. Mills learned plaintiff's return to work, she advised her assistant manager that plaintiff needed to turn in certain paperwork regarding her left leg restrictions before she could continue working. Ms. Mills asked the assistant manager to provide plaintiff with the necessary paperwork and plaintiff that she received said paperwork.
27. On January 27, 2009, plaintiff completed another set of leave of absence paperwork. However, the medical certification form was not completed.
28. On February 12, 2009, Ms. Mills wrote to plaintiff requesting that the medical certification form be completed. However, Ms. Mills testified that this correspondence contained an error as it was references plaintiff's low back injury. Ms. Mills then sent plaintiff subsequent correspondence clarifying the need for paperwork on her left leg condition, not her low back condition.
29. On February 19, 2009, plaintiff underwent an Independent Medical Evaluation (IME) with Dr. William Somers. Dr. Somers reviewed plaintiff's medical records, except for the FCE, which was provided to him for the first time at his deposition. Dr. Somers has opined that plaintiff has lumbar degenerative disc disease with radiculopathy related to her admittedly compensable low back injury of March 31, 2008.
30. Because Dr. Somers only evaluated plaintiff on one occasion and testified that her presentation at his office was different from what was reported in records from the FCE, the Full Commission gives little, if any weight to his testimony and opinions. *Page 10 
31. Plaintiff did not present any evidence that she has sought employment with any other employer since last working for defendant-employer.
32. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her March 31, 2008 injury by accident, plaintiff was unable to earn any wages in her former position with defendant-employer or in any other employment for the period of April 1, 2008 through April 16, 2008.
33. Based upon the totality of the credible vocational and medical evidence of record, plaintiff has failed to prove that any disability or inability to earn wages she may have had subsequent to October 30, 2008 was the result of her March 31, 2008 injury by accident.
34. There is insufficient evidence of record upon which to find that defendants actions in, or defense of this matter was unreasonable such as to entitle plaintiff to the attorney's fees as a sanction.
35. The undersigned's post-hearing Order of March 30, 2009 includes the following mandate, "That thirty days following the date upon which depositions are scheduled to be completed, with that date being June 29, 2009 by the current schedule, the parties shall submit a proposed Opinion and Award which shall contain page citations to the depositions or document, or a reference to the hearing testimony, upon which the finding or conclusion is based. (No emphasis added in this Opinion and Award.) The parties in this matter submitted a proposed Opinion and Award, but in violation of the undersigned's prior Order, neither party provided the required citations in their proposed Opinion and Award.
36. Each party, on their own and not at the request of the undersigned, also submitted Contentions, which did include citations. Nonetheless, this voluntary act on the part of the parties does not excuse their violation of a standing Order. Moreover, the purpose of the *Page 11 
requirement of citations is designed, in part, to shorten the time parties must await a final decision.
37. Due to the parties failure to comply with the undersigned's post-hearing Order of 30 March 2009, plaintiff, or counsel for plaintiff, and defendants, or counsel for defendants, are each hereby sanctioned the reasonable amount of $250.00.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On March 31, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). The compensability of plaintiff's lower back injury was admitted by defendants through the filing of an Industrial Commission Form 60 on April 21, 2008. Workers' Compensation Rule 18.
2. A claimant may meet the burden of showing that their earning capacity has decreased in one of four ways: (1) the production of medical evidence that they are physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that they are capable of some work, but that they have, after a reasonable effort on his part, been unsuccessful in obtaining employment; (3) the production of evidence that they are capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that they have obtained other employment at a wage less than that earned *Page 12 
prior to the injury. See, Russell v. Lowes Prod. Distrib.,108 N.C. App. 762, 425 S.E.2d 454 (1993).
3. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her March 31, 2008 injury by accident, plaintiff is entitled to be paid by defendants total disability compensation at the rate of $416.00 per week for the period of April 1, 2008 through April 16, 2008. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. Expert medical opinions that are mere speculation or conjecture are insufficient to establish a causal connection between a claimant's condition and ability or inability to work. Holley v.ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003); Young v.Hickory Bus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000).
5. Based upon the totality of the credible vocational and medical evidence of record, including Dr. Mikles speculative opinions, plaintiff has failed to prove that any disability or inability to earn wages she may have had subsequent to October 30, 2008 was the result of her March 31, 2008 injury by accident. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000).
6. As the result of her March 31, 2008 injury by accident, plaintiff is entitled to be paid by defendants permanent partial disability compensation at the rate of $416.00 per week for the period of fifteen (15) weeks for the five percent (5%) rating to her back. N.C. Gen. Stat. § 97-31(23).
7. Subsequent to January 15, 2009, when plaintiff was assigned her permanent partial disability rating, plaintiff is not entitled to have defendants pay for medical expenses *Page 13 
incurred by her for any of the conditions for which she seeks medical compensation in this matter. N.C. Gen. Stat. § 97-25.
8. Because there is insufficient evidence of record upon which to find that defendants actions in, or defense of this matter was unreasonable, plaintiff is not entitled to the attorney's fees as a sanction. N.C. Gen. Stat. § 97-88.1.
9. For their violation of the undersigned's post-hearing Order, plaintiff, or counsel for plaintiff, and defendants, or counsel for defendants, are sanctioned the reasonable amount of $250.00 each, the payment of which shall be made by check payable to the North Carolina Industrial Commission and forward the payment to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address. Workers' Compensation Rule 802(1).
 ***********
Based on the findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff total disability compensation at the rate of $416.00 per week for the period of April 1, 2008 through April 16, 2008. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein.
2. Defendants shall pay to plaintiff permanent partial disability compensation at the rate of $416.00 per week for the period of fifteen (15) weeks for the five percent (5%) rating to her back. Having accrued, this compensation shall be paid to plaintiff in a lump sum, subject to the attorney's fee approved herein. *Page 14 
3. Plaintiff, or counsel for plaintiff, and defendants, or counsel for defendants shall pay as a sanction for the violation of the undersigned's post-hearing Order the reasonable amount of $250.00 each, the payment of which shall be made by check payable to the North Carolina Industrial Commission and forward the payment to Ms. Carolyn Wall, Accounts Receivable, at the Industrial Commission address.
4. Defendants shall pay the costs.
This 8th day of February, 2010.
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ DIANNE C. SELLERS COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1